E-FILED; Anne Arundel Circuit Court
Docket: 7/8/2026 12:29 PM; Submission: 7/8/2026 12:29 PM
Envelope: 27250120

**IN THE CIRCUIT COURT OF MARYLAND**
**FOR ANNE ARUNDEL COUNTY**

**CHARLES FRANK SCHULTZ** *
4868 Ocean Gateway Rd.
Vienna, Maryland 21869 *

Plaintiff * Case No.: ~~C-02-CV-26-001732~~

v. *

**SHARON M. SCHULTZ** *
37082 Canvasback Rd.
Selbyville, Delaware 19975 *

and *

**THE GUARDIAN LIFE INSURANCE** *
**COMPANY OF AMERICA**
7 Hanover Square *
New York, New York 10004
**Serve:** *
Maryland Insurance Commissioner
200 St. Paul Place, Suite 2700 *
Baltimore, Maryland 21202
*
Defendants
* * * * * * * * * * * * *

## COMPLAINT

**NOW COMES** Plaintiff Charles Frank Schultz, by and through his attorneys, Whitney, LLP, and files this Complaint against Defendants Sharon M. Schultz and The Guardian Life Insurance Company of America, and in support thereof states as follows:

## FACTS AND ALLEGATIONS COMMON TO ALL COUNTS

1. Plaintiff Charles Frank Schultz ("Mr. Schultz") has resided in Dorchester County, Maryland, at 4868 Old Ocean Gateway Rd., Vienna, Maryland 21869, since November 2025. He is 68 years of age.

2. Defendant Sharon M. Schultz ("Mrs. Schultz") is a resident of Sussex County, Delaware, currently residing at 37082 Canvasback Rd., Selbyville, Delaware 19975.

3. At all times relevant hereto, Mr. Schultz and Mrs. Schultz were married and living together.

4. Mr. Schultz and Mrs. Schultz are presently involved in pending divorce proceedings in Delaware.

5. At the time of the forgery alleged in this matter, as set forth below, Mr. Schultz and Mrs. Schultz lived at 507 Hawthorne Rd, Linthicum Heights, Maryland 21090 in Anne Arundel County, Maryland.

6. Defendant The Guardian Life Insurance Company of America ("Guardian Life") is a life insurance company organized and existing under the laws of the State of New York, with its principal place of business at 10 Hudson Yards, New York, New York 10001.

7. Upon information and belief, at all times relevant hereto, Guardian Life was and is licensed to do and does conduct business in the State of Maryland.

8. Pursuant to Md. Code Ann., Insurance § 4-107, the Maryland Insurance Commissioner serves as Resident Agent for acceptance of service of process upon Guardian Life.

9. On March 15, 2000, Mr. Schultz purchased a life insurance policy from Guardian Life, designated as Policy No. 3992818 (the "Policy"), with a death benefit of Two Hundred Fifty Thousand Dollars ($250,000.00).

10. The Policy was issued and held solely in Mr. Schultz's name, and Mr. Schultz was and is the sole insured and rightful sole owner of the Policy. Mr. Schultz designated Mrs. Schultz and their two daughters as the three Policy Beneficiaries.

11. The Policy included a disability premium waiver rider providing that if Mr. Schultz became disabled before the age of 60, Guardian Life would waive all premium payments through age 96.

12. Mr. Schultz subsequently became disabled in 2016 before the age of 60 and qualified for the disability premium waiver.

13. In 2015, Mr. Schultz was determined to be legally disabled due to severe stenosis of the lumbar spine. He underwent cervical spine fusion surgery, conditions that resulted in his early retirement and continue to substantially impair his mobility and his ability to perform activities of daily living without assistance or prompting. Mr. Schultz also suffers from deep vein thrombosis and blood clots, a condition requiring ongoing medical management, and is a prostate cancer survivor. He contracted COVID-19 in early 2020, which caused the development of micro-blood clots in his lungs requiring hospitalization at Beebe Hospital for approximately one week, during which he nearly died. In November 2024, he sustained a severe heart attack requiring emergency coronary intervention, including the insertion of a coronary stent to address a ninety percent (90%) blockage of the Left Anterior Descending artery. The cumulative effect of these conditions has substantially and permanently limited Mr. Schultz's ability to work, to care for himself without assistance, and to manage his own daily activities and affairs.

14. Pursuant to this waiver, Guardian Life has continued to maintain the Policy in force without further premium payments from Plaintiff.

15. Mr. Schultz agreed to receive annual dividends from the Policy and elected to maintain the Policy's death benefit at $250,000.00 without accumulating additional value.

16. Annual dividend checks were issued by Guardian Life in connection with the Policy.

17. Prior to 2015 and increasingly thereafter, as the result of his disability and debilitating physical condition, Mr. Schultz relied on and trusted Mrs. Schultz to handle all of their financial affairs. On multiple occasions they discussed that Mrs. Schultz would assume responsibility for handling their financial affairs, and Mr. Schultz relied on Mrs. Schultz's representations she would do so.

18. In or about January 2015, Mrs. Schultz, without the knowledge, authorization, or consent of Mr. Schultz, contacted Guardian Life and requested that a change of ownership form be provided for the Policy.

19. On or about January 26, 2015, Mrs. Schultz submitted to Guardian Life a Request for Name or Ownership or Beneficiary Change form for the Policy, purportedly bearing Mr. Schultz's signature as well as her signature, requesting that the Policy's ownership be changed from Mr. Schultz as sole owner, to Mr. Schultz and herself as co-owners (hereinafter, the "Disputed Change of Ownership Form").

20. The signature on the Disputed Change of Ownership Form was not Mr. Schultz's signature. Mr. Schultz did not sign the Disputed Change of Ownership Form, did not request any change to the Policy's ownership structure, did not authorize any such change, did not consent to the addition of Mrs. Schultz as a co-owner of the Policy, and had absolutely no knowledge of the submission of the Disputed Change of Ownership Form or the resulting change of ownership. Mrs. Schultz forged Mr. Schultz's signature on the Forged Form.

21. Further, the Disputed Change of Ownership Form was not correctly filled out, including but not limited to the "complete address" of the purported new owners not being correctly completed, and the fields of the Current Owner, Joint Owner, New Owner and New Joint Owner incorrectly completed. Mrs. Schultz incorrectly listed herself as a Joint Owner, instead of

a New Joint Owner and signed her signature, and forged Mr. Schultz's signature directly under a section of the Disputed Change of Ownership Form stating in-part "By signing below, I certify under the penalty of perjury that the statements and answers given on this form are true, complete and correct to the best of my knowledge and belief." *See Partial Disputed Change of Ownership Form:*

2015-01-26 16:29 Optical 4105535395 >> Fax Server P 7/7

**See the "General Provisions" section at the end of this form for important information**

The General Provisions printed at the end of this form are part of this request. I have reviewed and understand the General Provisions.

By signing below, I certify under the penalty of perjury that the statements and answers given on this form are true, complete and correct to the best of my knowledge and belief. I declare that no bankruptcy proceedings are now pending against me and I am not subject to back-up withholding. I understand that the designations and changes on this form will not be effective unless all requirements are completed. I understand that federal law requires all financial institutions to obtain and record information that identifies each person who owns a life insurance policy. To meet this requirement the Company asks for my name, social security number, street address, date of birth and other information to verify my identity. Failure to provide this information could result in the requested change being denied.

DATE 1/23/2015

Charles i. Schultz [signature] 1/24/15
Current owner (required) Title (if applicable)

Sharon M. Schultz [signature]
Joint owner (if applicable) Title (if applicable)

New owner (if applicable) Title (if applicable)

New joint owner (if applicable) Title (if applicable)

22. Mrs. Schultz transmitted the Disputed Change of Ownership Form to Guardian Life from Mrs. Schultz's employer's fax machine at approximately 4:27 p.m. on January 26, 2015. At the time, Mrs. Schultz was employed in the Sears Optical Department at Marley Station Mall in Anne Arundel County.

23. Despite the Disputed Change of Ownership Form not being correctly completed, Guardian Life processed the Disputed Change of Ownership Form and recorded Mrs. Schultz as a co-owner of the Policy effective February 6, 2015. As a result, Guardian Life's records thereafter

reflected Mrs. Schultz as a co-owner of the Policy, and Guardian Life required her signature for any subsequent changes or modifications to the Policy.

24. As a direct result of the fraudulently obtained co-ownership of the Policy, Mrs. Schultz thereafter purportedly possessed the legal right, which she had obtained without Mr. Schultz's knowledge or consent, to require that her signature accompany any change to the Policy, including any change of beneficiary, surrender of the Policy, or other modification of Mr. Schultz's rights under the Policy.

25. For approximately eleven (11) consecutive years following the fraudulent change of ownership, Mrs. Schultz deliberately concealed from Mr. Schultz the fact that the Policy's ownership had been changed, including by intercepting and retaining all correspondence, change-of-ownership forms, and related documentation from Guardian Life and keeping such materials from Mr. Schultz.

26. Mr. Schultz retained only his original sole-ownership policy documents and had no reason to suspect that his sole ownership of the Policy had been altered.

27. During the period of concealment, annual dividend checks issued by Guardian Life reflected two names. Mr. Schultz was unaware that the two-name format on the dividend checks reflected co-ownership of the Policy, and Mrs. Schultz took no steps to inform him of this fact.

28. Mr. Schultz had no record of any fax, email, or written correspondence from Guardian Life relating to a change of ownership, nor any copy of the Disputed Change of Ownership Form.

29. In or about November 2025 Mr. Schultz sought to designate his son from another relationship, Charles F. Schultz, Jr., as a contingent beneficiary of the Policy. In connection with this request, Guardian Life informed Mr. Schultz for the first time that Mrs. Schultz was recorded

as a co-owner of the Policy and that her signature would be required to add or change any beneficiary designation.

30. Mr. Schultz was shocked by this disclosure, as he had never requested any change to the Policy's ownership structure, had never signed any document authorizing such a change, and had no record of any change to his sole ownership. He immediately requested that Guardian Life provide him with a copy of the co-ownership change form on file.

31. In or about December 2025, upon receiving a copy of the Disputed Change of Ownership Form, Mr. Schultz examined the signature purporting to be his and immediately recognized that it was not his signature. In addition to his forged signature and name, Mrs. Schultz had also written his social security number, date of birth, home address, phone number and email address on the Disputed Change of Ownership Form without his permission.

32. After receiving the Disputed Change of Ownership Form, Mr. Schultz confronted Mrs. Schultz about the forgery of his signature thereon and adding herself as a Joint Owner. Mrs. claimed that Mr. Schultz simply did not remember signing the Disputed Change of Ownership Form.

33. On multiple occasions since the discovery of the forged Disputed Change of Ownership Form, Mr. Schultz demanded that Mrs. Schultz admit the Disputed Change of Ownership Form was forged and take the necessary action so that he could reclaim sole ownership of the Policy. His demands were and have been consistently rejected through the present.

34. After receiving the Disputed Change of Ownership Form in or about December 2025, Mr. Schultz requested that Guardian Life conduct a fraud investigation into the forged change of ownership of the Policy.

35. By email dated December 30, 2025, Stefani C., a CARE Specialist with Guardian Life's Individual Markets Inforce Operations, confirmed to Mr. Schultz that Guardian Life's records showed a co-ownership change form received in 2015 reflecting the current ownership of the Policy.

36. Thereafter, Mr. Schultz initiated divorce proceedings against Mrs. Schultz in part due to the result of discovering her forgery of his signature on the Disputed Change of Ownership Form.

37. On January 12, 2026, Mr. Schultz filed a complaint with the Maryland Insurance Administration ("MIA"), Fraud and Enforcement Division, reporting the forgery and fraudulent change of ownership. The MIA assigned Fraud Reference No. MIA-2026-323681 to the complaint, and the matter was handled by Insurance Fraud Investigator Andrea Sheehan and Assistant Chief of the Criminal Fraud Unit Michael J. Allison. The investigation was closed without further action, in-part due to a determination that "the insurance company does not consider this to be insurance fraud which is a necessary element that needs to be proven in order to sustain a conviction."

38. On January 16, 2026, Mr. Schultz filed a police report with the Anne Arundel County Police Department, Northern District Police Station, reporting the forgery. The investigation is believed to be ongoing.

39. On March 3, 2026, Guardian Life's Anti-Financial Crimes Investigator Jason French emailed Mr. Schultz with its fraud investigation assessment. Despite Mr. Schultz's unequivocal assertion that the signature on the Disputed Change of Ownership Form was not his, and Mr. Schultz's signature from his Personal Information Statement on January 26, 2000 being apparently different than his forged signature on the Disputed Change of Ownership Form, Guardian Life concluded that "After a thorough review, the signatures and actions in question are

not considered fraudulent in nature" and declined to reverse the change of ownership absent "a request that is signed by both you and Sharon M. Schultz" or "a court order as part of your divorce proceedings that specifically outlines the ownership of this policy."

40. It is apparent from even the most basic comparisons of Mr. Schultz's signature of his Personal Information Statement submitted for the purpose of obtaining the Policy on January 26, 2000, and the forged signature applied by Mrs. Schultz to the Disputed Change of Ownership Form fifteen years later, that the signatures are different:



The statements contained in this PERSONAL INFORMATION STATEMENT, a copy of which shall be attached to and made part of any policy to be issued, are true to the best of my knowledge and belief and are made to induce the company to issue an insurance policy.

Agent's Signature

X Charles Frank Schultz
Signature of Proposed Insured

Date 1/26/00

3992818



See the "General Provisions" section at the end of this form for important information

The General Provisions printed at the end of this form are part of this request. I have reviewed and understand the General Provisions.

By signing below, I certify under the penalty of perjury that the statements and answers given on this form are true, complete and correct to the best of my knowledge and belief. I declare that no bankruptcy proceedings are now pending against me and I am not subject to back-up withholding. I understand that the designations and changes on this form will not be effective unless all requirements are completed. I understand that federal law requires all financial institutions to obtain and record information that identifies each person who owns a life insurance policy. To meet this requirement the Company asks for my name, social security number, street address, date of birth and other information to verify my identity. Failure to provide this information could result in the requested change being denied.

DATE 1/23/2015

Charles I. Schultz
Current owner (required) — Title (if applicable) — 1/24/15

Sharen M. Schultz
Joint owner (if applicable) — Title (if applicable)

41. Mr. Schultz then called and spoke with Mr. French. He brought the obvious discrepancies to the attention of Mr. French, who admitted he was aware the signatures looked different, yet refused to take any corrective action. Mr. Schultz then offered to pay for a handwriting expert, which, upon information and belief, Guardian Life did not use to analyze the different signatures. That offer was inexplicably declined by Mr. French.

42. Guardian Life's refusal to restore Mr. Schultz's sole ownership of the Policy, absent Mrs. Schultz's consent or a court order, has left Mr. Schultz unable to exercise his rights as the

sole and rightful owner of the Policy. Specifically, Mr. Schultz cannot change the beneficiary designation of the Policy, cannot surrender or modify the Policy without Mrs. Schultz's participation, and cannot otherwise exercise unfettered dominion and control over his own life insurance coverage, to which he has been entitled since March 15, 2000.

43. A change of ownership of an insurance policy effectuated by means of a forged signature, without the knowledge or consent of the policy's sole owner, conveys no valid legal interest to an unauthorized co-owner and is void ab initio under Maryland law.

44. As the result of Mrs. Schultz's illegal actions, Mr. Schultz has sustained damages, including but not limited to the loss of ownership of the Policy, the inability to exercise full control over the Policy, the inability to exercise full control over the dividend checks issued by Guardian Life per the Policy, the inability to exercise full control over his estate planning, and emotional distress, including but not limited to fear, anxiety, nervousness, worry, concern, headaches, nervousness and sleeplessness.

**COUNT I**
**BREACH OF FIDUCIARY DUTY / CONFIDENTIAL RELATIONSHIP**
**SHARON M. SCHULTZ**

45. Plaintiff hereby incorporates by reference all previous paragraphs as if fully set forth herein.

46. At all times relevant hereto, as the lawfully wedded spouse of Plaintiff, and based on their agreement that she would manage and be responsible for properly handling their financial affairs, Mrs. Schultz stood in a position of trust and confidence with respect to Plaintiff and his financial affairs, including but not limited to his life insurance policy.

47. Plaintiff and Mrs. Schultz entered into a confidential relationship resulting from Mrs. Schultz's agreement to manage and be responsible for properly handling their financial affairs.

48. Plaintiff trusted Mrs. Schultz, and, based on that trust and their agreement, agreed to allow Mrs. Schultz to manage their joint financial affairs including but not limited to the Policy.

49. Mrs. Schultz, with malice and willfulness, breached the duty she owed to Plaintiff pursuant to their confidential relationship when she forged his signature on the Disputed Change of Ownership Form and faxed it to Guardian Life to fraudulently obtain co-ownership of the Policy.

50. Mrs. Schultz continues to breach the duty she owes to Plaintiff pursuant to their confidential relationship as she continues to refuse to admit to her forgery of Plaintiff's signature on the Disputed Change of Ownership Form and otherwise refuses to take the necessary actions so that the Policy, with Plaintiff as the sole owner, can be reinstated.

51. As the result of Mrs. Schultz's breach of the duty she owed to Plaintiff pursuant to their confidential relationship, Plaintiff has incurred economic loss, loss of control of his Policy and the annual distributions thereto, and has suffered and continues to suffer from emotional distress, including but not limited to fear, anxiety, nervousness, worry, concern, headaches, nervousness and sleeplessness.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor in an amount greater than seventy-five thousand dollars ($75,000), including compensatory damages, punitive damages, court costs, and such other and further relief as the nature of this case requires.

**COUNT II**
**NEGLIGENCE**
**SHARON M. SCHULTZ**

52. Plaintiff hereby incorporates by reference all previous paragraphs as if fully set forth herein.

53. Mrs. Schultz owed a duty of care to Plaintiff to honor their agreement that she would manage and be responsible for properly handling their financial affairs, including but not limited to the Policy.

54. Mrs. Schultz owed a duty of care to Plaintiff, pursuant to their confidential relationship, to not take action adverse to Plaintiff with respect to handling their financial affairs, including but not limited to not forging his signature, on any documents relating to their financial matters.

55. Mrs. Schultz owed a duty of care to Plaintiff, pursuant to their confidential relationship, to not provide his personal information, including but not limited to his social security number, to any third party without his permission and/or for a use directly adverse to him.

56. Mrs. Schultz owed a duty to Plaintiff pursuant to Md. Code, Crim. Law § 8-301 ("Identify Fraud") as follows:

> (b) A person may not knowingly, willfully, and with fraudulent intent possess, obtain, or help another to possess or obtain any personal identifying information of an individual, without the consent of the individual, in order to use, sell, or transfer the information to get a benefit, credit, good, service, or other thing of value or to access health information or health care.
>
> (c) A person may not knowingly and willfully assume the identity of another, including a fictitious person:
>
> (2) with fraudulent intent to:
>
> (i) get a benefit, credit, good, service, or other thing of value;

57. Mrs. Schultz's actions described herein constitute a violation of Md. Code, Crim. Law § 8-301 and a breach of duties owed to Plaintiff.

58. Mrs. Schultz owed a duty to Plaintiff pursuant to Md. Code, Crim. Law § 8-601 ("Counterfeiting of Private Instruments and Documents") as follows:

> (a) A person, with intent to defraud another, may not counterfeit, cause to be counterfeited, or willingly aid or assist in counterfeiting any:
>
> (11) release or discharge for money or property.

59. Mrs. Schultz's actions described herein constitute a violation of Md. Code, Crim. Law § 8-601 and a breach of duties owed to Plaintiff.

60. Mrs. Schultz's violations of Md. Code, Crim. Law §§ 8-301 and 8-601 are evidence of her negligence. Plaintiff is within the class of persons intended to be protected by these statutes, and the harm he suffered is the exact type of harms these statutes were intended to prevent.

61. Mrs. Schultz negligently breached these duties she owed to Plaintiff when she forged Plaintiff's signature on the Disputed Change of Ownership Form and provided that, along with his personal information, including but not limited to his social security number, to Guardian Life for the purpose of adding herself as a Joint Owner of the Policy, and removing Plaintiff as the sole owner, without his permission or knowledge.

62. As a direct and proximate result of the negligent conduct of Mrs. Schultz, Plaintiff has incurred economic loss, loss of control of his Policy and the annual distributions thereto, and has suffered and continues to suffer from emotional distress, including but not limited to fear, anxiety, nervousness, worry, concern, headaches, nervousness and sleeplessness.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor in an amount greater than seventy-five thousand dollars ($75,000),

including compensatory damages, punitive damages, court costs, and such other and further relief as the nature of this case requires.

**COUNT III**
**FRAUDULENT CONCEALMENT**
**SHARON M. SCHULTZ**

63. Plaintiff hereby incorporates all previous paragraphs as if fully set forth herein.

64. Mrs. Schultz owed a duty of care to Plaintiff to honor their agreement that she would manage and be responsible for properly handling their financial affairs

65. Mrs. Schultz owed a duty of care to Plaintiff, pursuant to their confidential relationship, to not take action adverse to Plaintiff with respect to handling theirs or his financial affairs, including but not limited to not forging his signature, on any documents relating to their financial matters.

66. Mrs. Schultz owed a duty of care to Plaintiff, pursuant to their confidential relationship, to not provide his personal information, including but not limited to his social security number, to any third party without his permission and/or for a use directly adverse to him.

67. Mrs. Schultz owed a duty to Plaintiff pursuant to Md. Code, Crim. Law § 8-301 ("Identify Fraud") as follows:

> (b) A person may not knowingly, willfully, and with fraudulent intent possess, obtain, or help another to possess or obtain any personal identifying information of an individual, without the consent of the individual, in order to use, sell, or transfer the information to get a benefit, credit, good, service, or other thing of value or to access health information or health care.
>
> (c) A person may not knowingly and willfully assume the identity of another, including a fictitious person:
>
> (2) with fraudulent intent to:
>
> (i) get a benefit, credit, good, service, or other thing of value;

68. Mrs. Schultz owed a duty to Plaintiff pursuant to Md. Code, Crim. Law § 8-601 ("Counterfeiting of Private Instruments and Documents") as follows:

> (b) A person, with intent to defraud another, may not counterfeit, cause to be counterfeited, or willingly aid or assist in counterfeiting any:
>
> (11) release or discharge for money or property.

69. Despite these duties, Mrs. Schultz intentionally concealed from Plaintiff the material fact that she forged Plaintiff's signature on the Disputed Change of Ownership Form and provided that, including his personal information, and including but not limited to his social security number, to Guardian Life for the purpose of adding herself a Joint Owner of the Policy, and removing Plaintiff as the sole Owner, without his permission or knowledge.

70. Mrs. Schultz intentionally concealed the material fact with the intent to induce Plaintiff to act differently from how Plaintiff would have acted had he known the true facts.

71. Because of the concealment, Plaintiff acted in a manner different from how he would have acted had he known the true facts. Had Plaintiff known the true facts, he would have prevented Mrs. Schultz from removing him as the sole owner of the Policy.

72. As the result of Mrs. Schultz's non-disclosure or concealment, Plaintiff has incurred economic loss, loss of control of his Policy and the annual distributions thereto, and has suffered and continues to suffer from emotional distress, including but not limited to fear, anxiety, nervousness, worry, concern, headaches, nervousness and sleeplessness.

73. The fraudulent actions of Mrs. Schultz were done intentionally, with actual malice and in bad faith, for the purpose of deceiving Plaintiff.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor in an amount greater than seventy-five thousand dollars ($75,000), including

compensatory damages, punitive damages, court costs, and such other and further relief as the nature of this case requires.

**COUNT IV**
**MARYLAND STATUTE AGAINST FINANCIAL EXPLOITATION**
**("SAFE ACT")**
**SHARON M. SCHULTZ**

74. Plaintiff hereby incorporates all previous paragraphs as if fully set forth herein.

75. The Maryland Statute Against Financial Exploitation (hereinafter, the "SAFE Act"), Md. Code Ann., Est. & Trusts § 13-601, et seq., was created to:

(1) Establish a separate and distinct civil cause of action by a victim, or a representative of the victim, of financial exploitation;

(2) Provide a path to redress financial exploitation through the recovery of property and assets taken from victims while discouraging protracted litigation;

(3) Provide access to justice for victims and their families who are otherwise unable or unwilling to retain competent legal assistance due to cost; and

(4) Strongly deter individuals seeking to take advantage of susceptible adults or older adults.

Md. Code Ann., Est.& Trusts § 13-602.

76. The SAFE Act defines "financial exploitation", in part, as an act taken by a person who:

> (i) Stands in a position of trust and confidence with a susceptible adult or older adult and who knowingly obtains or uses, or endeavors to obtain or use, a susceptible adult's or older adult's funds, assets, or property with the intent to temporarily or permanently deprive the susceptible adult or older adult of the use, benefit, or possession of the funds, assets, or property for the benefit of someone other than the susceptible adult or older adult, in such a manner that is not fair and reasonable;
>
> (ii) By deception, false pretenses, false promises, larceny, embezzlement, misapplication, conversion, intimidation, coercion, isolation, excessive persuasion, or similar actions and tactics, obtains or uses, or endeavors to obtain or use, a susceptible adult's or older adult's funds, assets, or property with the

> intent to temporarily or permanently deprive the susceptible adult or older adult of the use, benefit, or possession of the funds, assets, or property for the benefit of someone other than the susceptible adult or older adult; or
>
> (iii) Knows or should know that a susceptible adult or older adult lacks capacity to consent and who obtains or uses, or endeavors to obtain or use, the susceptible adult's or older adult's funds, assets, or property with the intent to temporarily or permanently deprive the susceptible adult or older adult of the use, benefit, or possession of the funds, assets, or property for the benefit of someone other than the susceptible adult or older adult.

Md. Code Ann., Est. & Trusts § 13-601(e)(1)(ii).

77. "Obtains or uses" means any manner of taking or exercising control over property or making any use, disposition, or transfer of property. Md. Code Ann., Est. & Trusts § 13-601(h).

78. Since February 27, 2026, Plaintiff met the statutory definition of an "older person" as defined by Md. Code Ann., Est. & Trusts § 13-601(i), as someone who is at least 68 years of age.

79. At all times relevant hereto, Plaintiff met the statutory definition of a "susceptible adult" as defined by Md. Code Ann., Est. & Trusts § 13-601(k).

80. The SAFE Act provides an older adult or susceptible adult may bring "a cause of action against a person who has committed financial exploitation against the susceptible adult or older adult to recover damages and obtain other appropriate relief as set forth under this subtitle." Md. Code Ann., Est. & Trusts § 13-604.

81. Section 13-606 of the SAFE Act allows an older adult or susceptible adult, and/or their legal representative or their estate, to seek compensatory damages and an amount not exceeding three times the compensatory damages awarded and prejudgment interest.

82. Section 13-606(d) of the SAFE Act allows an award of reasonable attorney's fees and expenses under the Act.

83. The SAFE Act is to be "construed and applied liberally to promote its purpose of deterring and remedying the financial exploitation of susceptible adults and older adults." Md. Code Ann., Est. & Trusts § 13-608.

84. Mrs. Schultz financially exploited Plaintiff when she forged Plaintiff's signature on the Disputed Change of Ownership Form and provided that, including his personal information, including but not limited to his social security number, to Guardian Life for the purpose of adding herself a Joint Owner of the Policy, and removing Plaintiff as the sole owner, without his permission or knowledge, and did so in such a manner that is not fair and reasonable.

85. Mrs. Schultz has continued through the present to financially exploit Plaintiff by refusing to admit to her forgery of Plaintiff's signature on the Disputed Change of Ownership Form and otherwise refusing to take the necessary actions such that the Policy, with Plaintiff as the sole owner, can be reinstated.

86. As the result of Mrs. Schultz's financial exploitation of Plaintiff in violation of the SAFE Act, Plaintiff has incurred economic loss, loss of control of his Policy and the annual distributions thereto, and has suffered and continues to suffer from emotional distress, including but not limited to fear, anxiety, nervousness, worry, concern, headaches, nervousness and sleeplessness.

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court enter judgment in his favor in an amount greater than $75,000, including compensatory damages and an amount three times the compensatory damages awarded, prejudgment interest, reasonable attorney's fees and expenses, costs, and such other and further relief as the nature of this case may require.

**COUNT V**
**DECLARATORY JUDGMENT**
**SHARON M. SCHULTZ AND GUARDIAN LIFE**

87. Plaintiff hereby incorporates all previous paragraphs as if fully set forth herein.

88. An actual, justiciable controversy exists among the Parties concerning the validity of the February 6, 2015 change of ownership of the Policy effectuated by the Disputed Change of Ownership Form, the identity of the true and rightful owner of the Policy and the enforceability of the Policy by Plaintiff against Guardian Life.

89. Plaintiff contends, and Defendants Mrs. Schultz and Guardian Life dispute or have declined to act upon, that Mrs. Schultz forged Plaintiff's signature on the Disputed Change of Ownership Form to unlawfully obtain co-ownership of the Policy, which was done without Plaintiff's knowledge, consent, or authorization and is therefore void and of no legal force or effect.

90. Despite Plaintiff's claim, Guardian Life has refused to take the necessary action to restore Plaintiff as the sole owner of the Policy.

91. Guardian Life is a necessary and indispensable party to this action because it is the issuer and administrator of the Policy, Guardian Life currently recognizes Mrs. Schultz as a co-owner of the Policy based upon the Disputed Change of Ownership Form; and Guardian Life has refused to reverse the fraudulent ownership change and restore Plaintiff's sole ownership.

92. A declaratory judgment from this Court is necessary and appropriate to afford complete relief, to eliminate the uncertainty and controversy among the Parties regarding ownership of the Policy, and to restore Plaintiff's sole ownership of the Policy.

93. Plaintiff is entitled to a declaratory judgment declaring:

a. That the purported change of ownership of the Policy effectuated on or about February 6, 2015 through Defendant Mrs. Schultz's use of the

Disputed Change of Ownership Form is void, null, and of no legal force or effect, having been accomplished by means of a forged signature without Plaintiff's knowledge, authorization, or consent;

b. That Plaintiff was, is, has been and remains, at all times since March 15, 2000, the sole and rightful owner of the Policy;

c. That Defendant Mrs. Schultz holds no valid ownership interest in the Policy and has no authority to exercise any right of ownership or co-ownership thereunder; and

d. The Policy is valid and fully enforceable by Plaintiff against Guardian Life in accordance with its terms, including that Guardian Life shall give full effect to all terms of the Policy as if the purported co-ownership change had never occurred, and to not use the fraud in connection with the submission of the forged Disputed Change of Ownership Form to cancel, void or reduce benefits due to Mr. Schultz and/or the beneficiaries he identifies under the Policy.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter declaratory judgment in his favor as set forth above, and award costs, attorney's fees, and such other and further relief as the nature of this case may require.

Respectfully submitted,

*/s/ Daniel W. Whitney, Jr.*

Daniel W. Whitney, Jr. (AIS #1212130286)
Cheryl L. Wilhelm (AIS #9105020003)
Jordan L. Brownstein (AIS #2311281051)
WHITNEY, LLP
Suite 750
409 Washington Avenue
Towson, Maryland 21204
410-583-8000 (ph)
800-893-1239 (fax)
dwhitneyjr@whitneyfirm.com
cwilhelm@whitneyfirm.com
jbrownstein@whitneyfirm.com
**Attorneys for Plaintiff**